Gorbrandt v. Gorbrandt.

CASE 43.—ACTION BY MATILDA W. GORBRANDT AGAINST W. G. GORBRANDT FOR ALIMONY IN WHICH DEFENDANT FILED AN ANSWER PRAYING A DIVORCE.—January 19.

## Gorbrandt v . Gorbrandt

Appeal from Jefferson Circuit Court ;Chancery Branch (Second Division).

SAMUEL B. KIRBY, Judge.

From a decree awarding alimony and denying a divorce both parties appeal—Judgment on cross-appeal affirmed and on original appeal reversed.

1. Husband and Wife—Separation and Separate Maintenance—Actions—Sufficiency of Evidence.—In an action by a wife. for alimony, evidence held to show that plaintiff was at fault, and not entitled to a decree.
2. Constitutional Law—Statutes—Validity—Due Process of Law. —Ky. Stats. 1903, section 900, providing that, in actions for · alimony and divorce, the husband shall pay the costs of each party, unless it appears that the wife is at fault and has ample estate to pay the same, does not deprive the husband of his property without due process of law.
3. Husband and Wife—Divorce—Constitutional Law.—Ky. Stats.

1903, section 900, providing that, in actions for alimony and divorce, the husband shall pay the cost of each party unless it appears that the wife is at fault and has ample means to pay the same, does not contravene either the state or federal Constitution.

4. Divorce—Desertion—Sufficiency of Evidence.—Evidence held sufficient to entitled a husband to divorce on the ground of desertion.

JAS. W. GARRISON for appellee.

(No brief in the record for appellee.)

ANDREW M. SEA, JR., for appellant.

### ANALYSIS FOR AUTHORITIES.

1. The rule that the judgment of the chancellor will not be disturbed does not apply when there is little, if any conflict of testimony, and the right of the case is not left in doubt.

2. The wife, in order to obtain alimony, must make such a showing as will entitle her to a separation, i. e., a divorce a mensa. (Lockridge v. Lockridge, 3 Dana 29; Butler v. Butler, 4 Litt. 202; Hulett v. Hulett, 80 Ky. 366.)

3. To justify a separation, a state of facts must exist showing that it was demanded for the interest and protection of the life, health or happiness of the party complaining on account of the one in default. (Irwin v. Irwin, 96 Ky. 323.)

4. The husband has within reasonable bounds the right to determine and fix upon a residence for himself and wife. (Clubb v. Clubb, 23 Ky. Law Rep. 650; Klein v. Klein, 96 S. W. 848.)

5. If a wife abandon her husband without fault on his part, and refuses to return to him, she is not entitled to alimony. (Minor's Institutes, 312; Springer v. Springer, 21 Ky. Law Rep. 1292; Scott v. Scott, 19 Ky. Law Rep. 929; Lee v. Lee, 1 Duvall 197; Gaines v. Gaines, 26 Ky. Law Rep. 471.)

6. Or, as the rule has been repeatedly stated, when the wife is in fault, she cannot claim alimony. (Mutter v. Mutter, 97 S. W. 349; Woolfolk v. Woolfolk, 96 Ky. 657; Henry v. Henry, 76 S. W. 130; Smith v. Smith, 86 S. W. 678; Beall v. Beall, 80 Ky. 675; Cottrell v. Cottrell, 24 Ky. Law Rep. 2418; Garrett v. Garrett, 19 Ky. Law Rep. 1674; and numerous other cases cited.)

7. The wife is at fault if she abandons her husband, unless his conduct renders such action necessary for her personal security and safety or her peace and comfort. (Irwin v. Irwin, 96 Ky.

Gorbrandt v. Gorbrandt.

323; Boggess v. Boggess, 4 Dana, 308; Finley v. Finley, 9 Dana, 52.)

8. If the wife abandons the husband without fault on his part, for one year, and refuses to return to him, he is entitled to a divorce a vinculo.

9. The declarations of appellee against her interest are competent evidence. (Wilson v. Wilson, 12 Ky. Law Rep. 487; Stewart v. Stewart, 13 Ky. Law Rep. 46; Zumbiel v. Zumbiel, 113 Ky. 841; 14 Cyc. 686.)

10. In determining the fee to be allowed appellee's counsel, if any is allowed, the chancellor sits both as judge and jury, and may not only consider the evidence brought before him, but may draw on his own experience and knowledge. (Lilly v. Lilly, 24 Ky. Law Rep. 193; Moorehead's Trustee v. Anderson, 100 S. W. 340.)

11. Where only private rights and property are involved, an unconstitutional statute should be set aside, no matter how much time has elapsed since its enactment. (21 Harvard Law Review, 133—December 1907; Philadelphia v. Ridge Ave. Ry., 142 Penn. State 484.)

12. Section 900, Kentucky Statutes, insofar as it requires the husband to pay his wife's costs, no matter what the result of the suit may be, in an alimony or divorce suit, is unconstitutional, because:

(a) It deprives him of his property without due process of law. (14th Amendment; Articles 2 and 11 Kentucky Constitution; Daniel Webster, Speech in Dartmouth College case; McGehee, "Due Process of Law under the Federal Constitution," 1906, pp. 73, 74 and 75; City of Louisville v. Cochran, 82 Ky. 29-34; Varden v. Mount, 78 Ky. 89; W. D. Guthrie, The Fourteenth Amendment; Simon v. Craft, 182 U. S. 432; Davidson v. New Orleans, 96 U. S. 97; Windsor v. McVeigh, 93 U. S. 274; and dozens of other cases cited.)

(b) It denies to him the equal protection of the laws. (Missouri v. Lewis, 101 U. S. 22; Guthrie, The Fourteenth Amendment, 110-113; Pemboria v. Pennsylvania, 125 U. S. 188; C. B. & W. Ry. Co. v. Chicago, 166 U. S. 226; In re Grise, 79 Fed. Rep. 627; Smyth v. Ames, 196 U. S. 446-566; Gulf C. & S. F. Ry. v. Ellis, 165 U. S. 150; Ky. Railroad Tax cases, 115 U. S. 321; Ky. Stats. sec. 889; Cooley, Constitutional Limitations, 4th Ed. 442.)

(c) It is an act of arbitrary power.

OPINION OF THE COURT BY WM. ROGERS CLAY, Commissioner.

Plaintiff, Matilda W. Gorbrandt, instituted this action against William G. Gorbrandt for alimony. Defendant denied the allegations of the petition, and in an amended and supplemental answer charged that the plaintiff without fault on his part abandoned him, and asked that he be granted a divorce from her. The chancellor awarded plaintiff alimony in the sum of $20 per month, and directed that the defendant pay the costs of the action, including plaintiff's attorney's fee of $500. The divorce sought by the defendant was denied, and plaintiff and defendant both appeal.

The ground of plaintiff's complaint was that the defendant acted toward her in such a cruel and inhuman manner as to indicate a settled aversion to her, and to destroy permanently her peace and happiness; that she was subjected to continual mortification of mind by reason of the negligence, disdain, and contentious conduct of defendant and his adult daughter towards her and her child; that, when she moved to defendant's home, her position therein was made so disagreeable that she was compelled to, and did, leave defendant's home on the 30th day of January, 1906. At the time of their marriage the plaintiff was a widow; her husband having been dead about two years. She had three children, two of whom were grown, and the other was a young girl about 15 years old. Plaintiff never had any estate, but lived in humble quarters in the city of Louisville, and was dependent upon her brother and her grown son, each of whom contributed to her support. De-

fendant, William G. Gorbrandt, lived in Jefferson county, Ky., and was possessed of considerable property. He was a thrifty, enterprising, and economical German. The house in which he lived consisted of eight rooms, and was comfortably furnished. At the time of his marriage the defendant was a widower; his wife having been dead about two years. By his former wife he had eight children, who were all grown and married. At the time of their marriage the plaintiff and defendant were both over 50 years of age; the defendant being somewhat the older. The marriage took place on November 29, 1905, and plaintiff left defendant's home January 30, 1906.

Prior to their marriage the defendant wrote plaintiff the following letter: "Ankerich, Ky. 1905. My Dearest Friend, Mrs. T. Wheppler: I thought I would drop you a few lines to let you know I am feeling bad and got a bad eye so I can't rest of night but I hope when these few lines reaches you will find you all right well and feeling good but that isn't the case with me at present times I am thisgusted and got the bloos wery much from the news that I have heard lately should been said by some of your friends said that Mrs. T. Wheppler hasent been well for several years and is subect of Rumatisam every winter and every time get damp feet and my children found out that I am awaiting on you says papa don't mairey no woman with children whatever you do, dear brother Will don't you know what for a time you have had with meale [his first wife] for leven years sick and no pease after all the hard work you don. My dear friend Whepler you don't know how bad I feel over all this news I have heard here lately is enuf to make sick give me bloos you know that I would never want to go threw what I went true with in the

last tweff years for all whemman on earth unless she was well and helty so she could help me out some times and not me awaiting on her all my time for I have run to much hard time with poor first whife— God bless her. Well I hope you don't feel bad about this letter for I am thisgusted about this letter. I hope you went up to the dentist and had your roots poled so you can have your teeth fixed up in stile I will do it myself and so I will close now so good bye. Yours Truely, W. G. Gorbrandt.'' Upon receiving this letter plaintiff consulted her attorney, who thereupon wrote defendant that he had been employed to institute suit against him for the sum of $15,000 on account of his failure to carry out his marriage contract with plaintiff. Plaintiff's attorney also suggested in his letter that it would be preferable to have some adjustment of the matter without the notoriety of court proceedings, but that, unless this was done, suit would be instituted without delay. This letter was written on November 8, 1905. Soon thereafter the marriage took place.

It is insisted by counsel for appellee that it was defendant's purpose from the day he received the letter threatening to sue him for damages for breach of promise to marry plaintiff and thereafter make it so unpleasant for her that she would be forced to leave his home; that this purpose is shown by defendant's subsequent conduct. In our opinion it is just as reasonable to suppose that plaintiff desired to obtain defendant's money rather than to marry him. She first threatened him with suit for damages for failure to carry out his marriage contract, and, when he married her, she left his home in about two months, and instituted this action for alimony However this may be, the merits of the contentions

of the two parties must depend upon the evidence in the record. The record is voluminous. It contains much irrelevant and incompetent testimony, and but very little that bears directly upon the question involved. Much of the record is simply hearsay. Much of it relates to matters which, whether true or false, have but little bearing upon the merits of the case. Leaving out many matters which are too trivial to be the subject of discussion, plaintiff's whole case is based upon the assumption that the defendant at the time of their honeymoon was cold and indifferent towards her. In support of this position, we are pointed to the fact that the defendant failed to take her visiting among her neighbors; that he refused during the holidays to take her to any place of amusement; that he chided her daughter for eating between meals; that he did not provide a fire for her in her room, or a doctor when she was ill; that he spent his evenings playing cards in the dining room or kitchen with his family, or in the house of one of his tenants. There was evidence to the effect that plaintiff was very affectionate towards the defendant, occasionally sitting in his lap and kissing him, but that the defendant did not respond to these endearments. The testimony for the defendant was to the effect that the plaintiff had the blues as soon as she came to the country, and stated that she did not like the country. She also expressed regret that she had married the defendant. She frequently showed the picture of her dead husband, and extolled his numerous virtues. She stated upon one occasion that she had loved the defendant very much, but now she hated him. After she left the defendant sent his family physician to see her for the purpose of effecting a reconciliation. This offer was peremptorily

rejected by the plaintiff. The defendant had pro-
vided fires in the kitchen and dining room, and per-
mitted plaintiff to have a fire in her room whenever
she wished it. He was opposed to having a fire in
the bedroom at night, holding to the theory that it
is more healthy to sleep in a cold room.

We have carefully read the entire record for the
purpose of ascertaining whether there was any evi-
dence of any act or speech on the part of the defend-
ant bordering on cruelty or harshness towards the
plaintiff. There is absolutely nothing that could be
construed into harshness or cruelty. Doubtless it is
true that the defendant was not demonstrative to-
wards the plaintiff; that he did not show that affec-
tion and tenderness which are characteristic of youth.
This, however, could hardly have been expected.
When two people, past the meridian of life, who have
each been married before and reared a family, again
marry, it is altogether improbable that they will
change their manner and habits of living. No doubt
the defendant in this case was set in his ways. He
lived a simple life. His pleasures were few. He
found them among his children and in playing sim-
ple games of cards with them or with his tenants.
Upon his marriage he did not immediately change
his manner of living. 'Plaintiff did not stay long
enough to see whether or not she could effect a
change. She remained at defendant's home only two
months. Perhaps if she had remained longer, and
shown that she was pleased to be a member of his
household, he might have been able to conform his
life to her ideas. Old age is seldom demonstrative
except towards those who have long been a part of
its life. When people marry under such circum-
stances, they do so with the full knowledge that the

enthusiasm of youth is gone, and with it the tenderness and sentiment which are inseparable from it. Where people are married in youth, that tenderness frequently grows with each passing year, and reaches its most perfect state in the hearts of the old. Not so, however, when the marriage is contracted when the parties are past the meridian of life. It is seldom then that either is demonstrative in his or her conduct towards the other. The defendant in this case provided a comfortable home for the plaintiff. He was not cruel or harsh towards her. It may be that he was not demonstrative in his conduct, though there is some evidence to the contrary. At any rate, his conduct towards her did not justify her in leaving his home and in claiming support at his hands wherever she might desire to go. If such were the law, it would establish a precedent for every wife who became in the least dissatisfied because her husband was not as demonstrative as she thought he ought to be to leave the home which he had provided and require him to support her elsewhere. This would be a direct blow at the home, and in our opinion should not be permitted. Of course, there may be cases where the husband's coldness and indifference to the wife border on cruelty, and under such circumstances the wife may be justified in leaving him, and he may be required to contribute to her support wherever she may be. In this record no such state of facts is presented. Upon a reading of the whole record, we are inclined to the opinion that she left defendant because she wanted to leave. Certainly she manifested no desire to return when he made her an offer of reconciliation. We therefore conclude that she was at fault, and that her prayer for alimony should be denied.

Counsel for appellant attacks the fee of $500 allowed plaintiff's attorneys, both on the ground that it is excessive and the further ground that section 900, Ky. St. 1903, is unconstitutional. That section provides that in actions for alimony and divorce the husband shall pay the cost of each party, unless it is made to appear in the action that the wife is at fault and has ample estate to pay the same. Without entering into an extended discussion of the question, we may say that marriage is a civil institution, and is subject to reasonable regulation by the State. Parties who marry contract with reference to the statute and the liability that it imposes. That being the case, the husband is not deprived of his property without due process of law. He enters into the marriage state voluntarily, with full knowledge of the liability it entails. The liability imposed by the statute is not unreasonable, and the statute itself in our opinion does not contravene either the letter or the spirit of any section of our State or federal Constitution. We are of the opinion, however, that the fee allowed by the chancellor is excessive. While counsel for appellee did a great deal of work, by far the larger part of it was altogether unnecessary. We conclude that an allowance of $100 is amply sufficient for the services rendered.

Being of the opinion that plaintiff left defendant's home without fault on his part, and that he in good faith sought to have her return, we think defendant on his answer and counterclaim is entitled to a divorce from plaintiff.

For the reasons given, judgment on the cross-appeal is affirmed, and judgment on original appeal is reversed, and cause remanded for proceedings consistent with this opinion.